

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 7, 2023

**VIA ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *United States v. Kwok, et al.*, S1 23 Cr. 118 (AT)

Dear Judge Torres:

    The Government writes in response to the Motion for Return of Property, dated December 6, 2023 (Dkt. 186 ("Motion")). The Motion, which was filed by counsel for 3,345 purported customers (the "Petitioners") of the Himalaya Exchange (the "Exchange"), seeks the "return of [Petitioners'] property seized by the United States" in connection with the above-captioned case. (Motion at 1.) As alleged in the Indictment in the above-captioned case, the Exchange is an instrumentality of the charged fraud crimes, and the funds in question—which were seized by the Government in between 2022 and 2023 pursuant to judicially authorized seizure warrants—are listed in the Indictment as assets subject to forfeiture. (Superseding Indictment, Dkt. 19 at ¶¶ 12, 17-24, 55(j), (k), (m), (o), (p), (s).) For the reasons described herein, the Government respectfully requests that the Court deny the Motion.

    The Motion seeks the return of assets pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. Courts have jurisdiction under Rule 41(g) only when (1) the movant has "no adequate remedy at law", and (2) "the equities favor the exercise of jurisdiction." *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006). When assessing jurisdiction, the Second Circuit has advised district courts that "[j]urisdiction under Rule 41 is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials." *Id.* at 382 (internal quotation marks omitted) (citing *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988) and *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974)).

    Here, as a result of the Indictment's forfeiture allegations, which include the funds at issue, the Petitioners have an adequate remedy at law to resolve their claims—namely, the exclusive remedies available to claimants seeking to assert an interest in forfeitable property under Title 21, United States Code, Section 853. In particular, Title 21, United States Code, Section 853(n) provides the *exclusive* means by which a party may assert an interest in property subject to forfeiture. *DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 (2d Cir. 2007) ("It is . . . well settled that section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets—after the preliminary forfeiture order has been entered."); *see also United States*

Case 1:23-cr-00118-AT   Document 188   Filed 12/07/23   Page 2 of 3

Page 2

*v. Rashid*, 373 F. App'x 234, 238 (3d Cir. 2010). Consequently, there are no grounds to assert equitable jurisdiction pursuant to Rule 41(g). *See De Almeida*, 459 F.3d at 382.

It may well be that some, or all, of the Petitioners are entitled to the Government's seized funds at an appropriate time. But this is not that time. Following a conviction, a district court "must determine what property is subject to forfeiture under the applicable statute" and "promptly enter a preliminary order of forfeiture . . . without regard to any third party's interest in the property." F ed. R. Crim. P. 32.2(b). Criminal forfeiture proceedings pursuant to Sections 981 and 982, including any related judicial proceedings, are governed principally by 21 U.S.C. § 853. *See* 18 U.S.C. § 982(b)(1). After a court issues a preliminary order of forfeiture, a third party may petition the court for an ancillary hearing to "adjudicate the validity of [the third-party's] alleged interest in [the criminally forfeited] property." 21 U.S.C. § 853(n); *see also United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018).

In any event, it is not clear to the Government that the Petitioners have satisfied threshold Article III standing requirements. The Government was first contacted by Petitioners' counsel yesterday. During a phone call, the Government requested that Petitioners' counsel provide information sufficient to demonstrate that the 3,345 Petitioners were all, in fact, customers of the Exchange. Counsel declined to provide any such information, claiming that doing so could, in sum and substance, jeopardize Petitioners' safety from the "Chinese Communist Party." The Government further inquired how Petitioners' counsel himself had verified that all 3,345 of his clients were customers of the Exchange. Counsel responded that each Petitioner had provided him with a "seven-digit unique identifier," which he then used to confirm the Petitioners' status as customers directly with counsel for the Exchange. However, Petitioners' counsel declined to share any of the information about the Petitioners with the Government, or to explain how he was able to verify their status as Exchange customers using such identifiers. Counsel also indicated that he has not yet obtained documentation in the Exchange's possession regarding his clients' Exchange accounts because, among other things, he did not want to be responsible for "getting someone killed." When the Government offered to confer to find a way to address counsel's privacy concerns, counsel stated, in substance, that he would be filing the Motion to "put the court on notice" that "there are people getting stomped on." Thus, the Government does not agree with Petitioners' counsel's certification that he "conferred with counsel for the Government in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court, and ha[s] been unable to reach agreement." (Dkt. 186 at 2.)

To be clear, and as explained above, the Government seized more than $600 million in proceeds of the charged crimes—including the Exchange funds in question—to preserve those funds for later disbursement and restitution to victims. When such distribution should occur, and the mechanism for doing so, will be determined after the completion of the pending criminal proceedings and as the law directs.

Congress has determined that the forfeiture process is the exclusive means for persons claiming an interest in forfeitable property to assert those interests. To allow some third parties to subvert that process and "jump the line" may prejudice other third parties seeking to claim an interest in the property. Ancillary forfeiture proceedings are specifically designed to ensure an orderly and efficient process for resolving competing claims to forfeitable assets. Accordingly, the Government requests that the Court deny Petitioners' Motion.

The Government is available to address any questions the Court may have.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By: /s/
    Ryan B. Finkel
    Juliana N. Murray
    Micah F. Fergenson
    Justin Horton
    Assistant United States Attorneys
    (212) 637-6612 / 2314 / 2190 / 2276