UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>YVETTE WANG<br>a/k/a "Yanping,"<br>a/k/a "Y,"<br><br>Defendant. | **THIRD-PARTY PETITION TO ADJUDICATE PETITIONER'S INTEREST IN FORFEITED PROPERTY AND TO AMEND THE PRELIMINARY ORDER OF FORFEITURE**<br><br>**- VERIFIED CLAIM OF HAMILTON OPPORTUNITY FUND SPC WITH REGARD TO FUNDS IN ACCOUNT NUMBER 5090042770 SEIZED FROM SILVERGATE BANK**<br><br>S4 23 Cr. 118 (AT) |

Petitioner Hamilton Opportunity Fund SPC ("Hamilton" or the "Petitioner") files this Third-Party Petition to Adjudicate Petitioner's Interest in Forfeited Property and to Amend the Preliminary Order of Forfeiture, pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) (the "Petition"). Petitioner seeks the return of funds in which Petitioner has a legal right, title, and/or interest – more specifically, the funds in bank account number 5090042770 at Silvergate Bank ("Account 2770") ("Petitioner's Property") and that the United States Government (the "Government") improperly seized as part of an order of forfeiture entered into with Defendant Yvette Wang ("Defendant Wang"). However, any order of forfeiture reaching the funds in Account 2770 was unlawful and improper as Defendant Wang has no legal

1

right, title, or interest in either Account 2770 or Petitioner's Property. The Forfeiture Order[1] is therefore rendered invalid as to Petitioner's Property because right, title, or interest in Petitioner's Property was vested in Petitioner rather than Defendant Wang, and was superior to any right, title, or interest of Defendant Wang at the time of the commission of the acts which gave rise to the Forfeiture Order (as defined below).

The funds in this account were segregated as required by Cayman Islands law and belonged solely to the legitimate investors in Class B shares of Hamilton's segregated portfolio, Hamilton M&A Fund SP (the "M&A Fund"). Such investors (collectively, the "Investors") lost access to their funds after the Government improperly seized Account 2770, and the M&A Fund could not close on the Digital Bank investment (as more fully argued below). Many of the individual Investors have already filed petitions with this Court for the return of the funds that they invested in the M&A Fund (the "Petitioning Investors"). Hamilton supports those petitions and agrees with the arguments stated therein. It files this Petition only out of an abundance of caution, in the event the Court does not agree with the Petitioning Investors' arguments regarding a constructive trust and, instead, determines that the Investors' money should still be considered the property of Hamilton, as well as to assist any Investors who do not file petitions. In the event that this Court determines that, for the purpose of these proceedings, the Investors' money is the property of Hamilton, Hamilton affirms that if this Petition is granted, it will return the Investors' money in accordance with the provisions of the Subscription Agreement (as defined below). As

---

[1] Reference is to the Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Forfeiture Order") that this Court entered on January 7, 2025, with consent from Defendant Wang. ECF No. 488.

2

such, this Court should amend the Forfeiture Order to remove Petitioner's Property[2] and order that the Government immediately return Petitioner's Property to Petitioner so that Petitioner can return the funds to their rightful owners: the Investors. In support of Petitioner's claim, Petitioner states as follows:

I. **PRELIMINARY STATEMENT**

It appears that Petitioner's Property – meaning, the funds in Account 2770 – were purely "collateral damage" in the Government's seizure of assets prior to its prosecution of Defendant Wang and Miles Guo ("Defendant Guo"). It has been over two and a half years since the seizure of Account 2770, and in that time span, there has never been any explanation as to how funds in Account 2770 are related to any of the offenses to which Defendant Wang pled guilty, a necessary prerequisite to a valid forfeiture order under the law. There was never any showing that any proceeds of any unlawful activity to which Defendant Wang pled guilty were ever deposited in Account 2770, no showing that any proceeds of such activity were ever commingled with Petitioner's Property, and, indeed, no showing that Defendant Wang ever had anything to do with Account 2770 or even knew of its existence.

As will be shown below, Petitioner is the named owner on Account 2770 and thus has a vested, legal, right, title and interest in the funds therein – Petitioner's Property – and Petitioner's Property cannot be seized by the Government in this case. Neither Defendant Wang, nor the Government who now stands in her shoes, has ever demonstrated that they have any interest whatsoever in Petitioner's Property. While Defendant Wang consented to the forfeiture of "all her

---

[2] To be clear, the use of the term "Petitioner's Property" is not meant to assert that Hamilton's claim to such funds is superior to that of the Investors; to the contrary, as stated above, Hamilton endorses the legal theory of constructive trust set forth in the petitions of the Petitioning Investors. Again, this petition is filed by Hamilton in the alternative to that of the Petitioning Investors, in case the Court deems that Account 2770 remains the legal property of Hamilton, rather than the Investors.

right, title, and interest" in Account 2770 (and thus, Petitioner's Property) in the Forfeiture Order (ECF No. 488 at 2-3), Defendant Wang never had such "right, title, and interest" in Account 2770 or any funds therein. That is because Petitioner is the legal and sole owner of Account 2770. Defendant Wang was not a signatory on Account 2770, never deposited money into Account 2770, and had no control over Account 2770. There is also no evidence that Defendant Wang ever directed anyone, directly or indirectly, to deposit any money into Account 2770. It is axiomatic that Defendant Wang cannot forfeit property that she does not own, and in which she has no interest. In fact, it appears that the Court never established that Petitioner's Property is even subject to forfeiture in the first instance, as required by Fed.R.Crim.P. 32.2(b)(1)(A).

For all the foregoing reasons, and for the reasons demonstrated below, Petitioner respectfully requests that this Court: (1) grant this Petition; (2) amend the Forfeiture Order to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to the Investors or, in the alternative, to = Petitioner to return to the Investors; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

## II.   BACKGROUND FACTS

### A.   Petitioner's Property

1.  Petitioner is a Cayman Islands Segregated Portfolio Company operating as a mutual fund and registered with the Cayman Islands Monetary Authority under Section 4(3) of the Mutual Funds Act (Revised) of the Cayman Islands. More specifically, the Fund is a fund specializing in equity investments selected by its investment manager (the "Investment Manager") with a view to long-term capital gains.

2.  Sometime in 2021, the Investment Manager identified an opportunity to invest in a

bank (the "Digital Bank"). In connection with this investment, Petitioner sought to raise capital by issuing two classes of shares: Class A shares and Class B shares. This Petition specifically concerns the Class B shares for which the Investors wired money into Account 2770. To be sure, Account 2770 contains only the funds wired by Investors, and does not contain any funds from any other sources.

3. Accordingly, in furtherance of this investment opportunity, on or about January 20, 2022, Petitioner provided a group of investors a confidential Offering Memorandum (the "Offering Memorandum"). A true and correct copy of the Offering Memorandum is attached hereto as **Exhibit A**. The Offering Memorandum described the investment opportunity and offered investors an opportunity to acquire the Class A and Class B Shares attributed to a segregated portfolio of Hamilton Opportunity Fund – the M&A Fund.

4. Defendant Wang was not a director or member of, and otherwise lacked any corporate or equity interest in, the M&A Fund or Petitioner. The evidentiary record is devoid of any evidence to the contrary.

5. Defendant Wang did not make any investments in the M&A Fund; again, the evidentiary record is devoid of any evidence to the contrary.

6. Interested investors in the M&A Fund's Class B shares submitted their applications (the "Subscription Agreement") to Petitioner. Upon completing a Know-Your-Customer ("KYC") and Anti-Money-Laundering ("AML") process done by NAV Fund Services, the largest independent fund administrator in the world, and upon approval from Petitioner, the Investors then wired money into Account 2770 pursuant to the terms of the Subscription Agreement. *Id.*

7. Pursuant to laws of the Cayman Islands, funds of each class of each individual segregated portfolio of Petitioner, including the M&A Fund, are kept segregated, separate, and

separately identifiable from, those of any other segregated portfolios of the Petitioner and any general assets of the Petitioner.

8. There was a total of 324 Investors in the Class B Shares of the M&A Fund. Each Investor's individual investment is specific only to the investment in the Digital Bank, and each investment amount is fully identifiable and properly recorded by the independent fund administrator after stringent KYC and AML processes.

### B. Seizure of Account 2770

9. On September 18, 2022, the Government seized the entire balance of the funds in Account 2770.

10. As a result of the seizure, the Investors' funds did not go through to acquire Digital Bank on the transaction's closing date as had been promised. Accordingly, the Investors not only lost access to the funds they wired to Account 2770 for the investment in Digital Bank, but also did not get the investment in Digital Bank for which they bargained.

11. To date, there are no documents available publicly as to what probable cause the Government had to seize the funds in Account 2770.

### C. The Criminal Case of Defendant Wang and Defendant Guo and the Forfeiture Order

12. On March 6, 2023, the Government filed an indictment against Defendant Wang, Defendant Guo, and a third defendant, William Je, who has never been arraigned. ECF No. 2.

13. On May 3, 2024, the Government filed a superseding information (the "Superseding Information") against Defendant Wang. ECF No. 325. The Superseding Information charged Defendant Wang with one count of Conspiracy to Commit Wire Fraud (Count I) (Superseding Information at 1-2) and one count of Conspiracy to Commit Money Laundering (Count II) (Superseding Information at 2-4). The Superseding Information also contained a

Forfeiture Allegation (the "Forfeiture Allegation"). Superseding Information at 4.

14.     On the same day, May 3, 2024, Defendant Wang pled guilty to Count I and Count II as charged in the Superseding Information.

15.     Also on May 3, 2024, this Court entered a Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Original Forfeiture Order"). ECF No. 329.

16.     In the Original Forfeiture Order, Defendant Wang consented to forfeit, "all *her* right, title, and interest in" certain assets, including Account 2770, because such property purportedly "constitute[d] proceeds of the offenses charged in Count One that the Defendant personally obtained and/or property involved in offense charged in Count Two of the [Superseding] Information." Original Forfeiture Order at 2-6 (emphasis added).

17.     Defendant Guo did not plead guilty to any of the offenses charged against him. Accordingly, a jury trial was held between May 22, 2024 and July 16, 2024 (the "Guo Trial"). On July 16, 2024, the jury found Defendant Guo guilty of racketeering conspiracy, conspiracy to commit wire fraud, conspiracy to commit money laundering, conspiracy to commit securities fraud, securities fraud, wire fraud, and money laundering. ECF No. 395. As of the date of this Petition, Defendant Guo has not yet been sentenced.

18.     On January 6, 2025, Defendant Wang was sentenced.

19.     On January 7, 2025, this Court entered the Forfeiture Order. ECF No. 488. As it pertains to Petitioner, the Forfeiture Order is substantially similar to the Original Forfeiture Order in all material respects. In the Forfeiture Order, Defendant Wang consented to forfeit, "all *her* right, title, and interest in" certain assets, including Account 2770, because such property "constitute[d] proceeds of the offenses charged in Count One that the Defendant personally obtained and/or property involved in offense charged in Count Two of the [Superseding]

7

Information." Forfeiture Order at 2-11 (emphasis added).

20.     Petitioner's Property is described in both the Original Forfeiture Order and the Forfeiture Order as follows:

> $89,992,861.75 in United States currency formerly on deposit in account number 5090042770 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022 (23-FBl-000074).

Original Forfeiture Order at 3; Forfeiture Order at 3.

### III.    ARGUMENT

21.     In an ancillary criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c)(1), this Court must determine, by a preponderance of the evidence, whether a petitioner has a legal right, title, or interest in the property to be forfeited, and whether such right, title, or interest renders the order of forfeiture invalid, in whole or in part, because such interest was vested in the petitioner rather than the defendant, or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. *See* 21 U.S.C. § 853(n)(6)(A).

22.     Here, Petitioner has a legal right, title, or interest in Petitioner's Property pursuant to 21 U.S.C. §853(n)(6)(A) by virtue of being the named account owner of Account 2770 and by virtue of having full dominion and control over the funds therein. Moreover, Petitioner's interest in Petitioner's Property was both vested in Petitioner and was superior to any right Defendant Wang had in Petitioner's Property because Defendant Wang had *no* legal right, title or, interest in either Petitioner's Property or Account 2770 generally. In other words, Defendant Wang could not forfeit her interest in Account 2770 because she had no interest that was properly subject to criminal forfeiture. Accordingly, the Forfeiture Order should be modified to remove Petitioner's Property, and Petitioner's Property should be returned to either the Investors or to the Petitioner,

for the benefit of the Investors.

### A. The Government Failed to Demonstrate that the Funds in Account 2770, Including Petitioner's Property, Were Properly Subject to Forfeiture in the First Instance, Making the Forfeiture Order Improper as to Such Funds

23. The Government has no legal cause to retain Petitioner's Property because it has failed to present evidence demonstrating that Petitioner's Property is actually forfeitable property as required by Fed.R.Crim.P. 32.2(b)(1)(A).

24. "When the government seeks to obtain an order of forfeiture, 'Federal Rule of Criminal Procedure 32.2(b)(1) ... requires the sentencing court to determine what property is subject to forfeiture under the applicable statute.'" *United States v. Watts*, 786 F.3d 152, 172 (2d Cir. 2015) (citing *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir.2007)). Pursuant to Fed.R.Crim.P. 32.2, "if the government seeks forfeiture of specific property, the court *must* determine whether the government has established the requisite nexus between the property and the offense." Fed.R.Crim.P. 32.2(b)(1)(A) (emphasis added); *U.S. v. Watts*, 786 F.3d at 172. "At various points in the proceedings, ***the government bears the burden of proving this legal conclusion*** to varying degrees of certainty: as a matter of probable cause at a post-indictment hearing. . .or by a preponderance of the evidence at a bench trial or before a jury." *Id.* (emphasis added) (internal citations omitted). "Only if the government meets the relevant legal threshold, however, may the property in question be considered 'subject to forfeiture' in any legal sense. Prior to that, while the government has simply announced its intent to seek forfeiture through the indictment, the property is seen merely as 'potentially forfeitable' . . . or 'potentially subject to forfeiture.'" *Id.* (internal citations omitted).

25. This means that before the court even reaches the question of whether the petitioner is entitled to the return of the property under §853(n), it is necessary to determine if the property in dispute is actually forfeitable in the first instance. If not, the government had no statutory

9

authority to seize the property. If the property was improperly seized, the government must return the accounts seized regardless of whether the claimant can meet the criteria set forth in §853(n). *See e.g. United States v. Delco Wire & Cable Co.*, 772 F. Supp. 1511, 1518 (E.D.PA, 1991).

26. A full and complete Fed. R. Crim. P. 32.2(b)(1)(A) inquiry is critical to the fair administration of justice. The entire forfeiture system rests upon the supposition that a court has conducted an inquiry and determined that the property is subject to forfeiture. In enacting ancillary proceeding statutes, Congress chose to place the burden of proof on the third-party during an ancillary proceeding, since "the United States will have already proven its forfeiture allegations in the criminal case beyond a reasonable doubt." S. REP. 98-225, 209, 1984 U.S.C.C.A.N. 3182, 3392.

27. In this matter, there has never been a determination that there exists a nexus between Account 2770 and any of the offenses to which Defendant Wang pled guilty, and, as a result, Petitioner is forced to file this Petition. Based on all the information contained in the publicly available documents in both Defendant Wang's and Defendant Guo's criminal case, the Government cannot prevail with respect to Account 2770.

28. Here, in the Superseding Information, the Government included a Forfeiture Allegation as to both Counts I and Count II and sought forfeiture of specific property. Superseding Information at 4. There is no evidence in the record that the Government even attempted to show, let alone that it met its burden to show, a nexus between Account 2770, and the offenses to which Defendant Wang pled guilty.

29. As to Count I, the Forfeiture Allegation states that, "[a]s a result of committing the wire fraud offense alleged in Count One of this Superseding Information, YVETTE WANG, a/k/a "Yanping" a/k/a "Y," the defendant, shall forfeit to the United States pursuant to Title 18, United

States Code, Section[] 981(a)(1)(C)[3]. . .and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense." Superseding Information at 4. The Government must prove the elements of forfeiture under 18 U.S.C. § 981(a)(1)(C) by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). Moreover, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

30.     The record is devoid of any allegations regarding how the funds in Account 2770 are, or were derived from, proceeds traceable to Defendant Wang's conspiracy to commit wire fraud. The Superseding Information alleges that "[f]rom at least in or about 2018 until at least on or about March 15, 2023, coconspirators made false representations to investors that they would receive stock in exchange for their investments in GTV, the Himalaya Farm Alliance organization, and GClubs, and that they would receive cryptocurrency in exchange for their investments in the Himalaya Exchange [(the "Fraud Scheme")]. Through the [Fraud Scheme], YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendant, and her coconspirators, including Miles Guo, induced investors to invest more than $1 billion into entities Guo controlled." Superseding Information at 2. There are no allegations in the Superseding Information regarding Defendant Wang depositing any proceeds from the Fraud Scheme into Account 2770. Similarly, there are no allegations in the Superseding Information that as a result of the Fraud Scheme, any investors deposited money into

---

[3] 18 U.S.C. § 981(a)(1)(C) provides that "[a]ny property, real or personal, [is subject to forfeiture] which constitutes or is derived from proceeds traceable to a violation of" various specified offenses, including violations of 18 U.S.C. § 1343, wire fraud, as charged against Defendant Wang in Count I.

11

Account 2770. Nor can there be any such allegations, as the only deposits into Account 2770 were from investors who were investing in the Digital Bank – an investment that is not implicated in any way by the "Fraud Scheme" described in the Superseding Information. To be sure, Petitioner affirms that Petitioner was never a victim of any conduct by Defendant Wang alleged in the Superseding Information and does not believe that any of Petitioner's Property was ever used in any unlawful activity.

31. Finally, there was no relevant evidence during Defendant Guo's trial about Account 2770. There was testimony during Defendant Guo's trial from Mr. James Robert Collins, the CEO of Mercantile Bank, that - Petitioner understands - alluded to Account 2770. However, this testimony had nothing to do with Defendant Wang or these forfeiture proceedings. If anything, this testimony underscored the *legitimacy* of the Digital Bank investment and, therefore, assists the Petitioner's argument herein. Mr. Collins testified that the Investors' funds were wired to Mercantile Bank for the acquisition of the Digital Bank on the closing date of the transaction; however, they never made it to Mercantile Bank because the Government seized Account 2770. *See* Guo Trial, Jun. 17, 2024, 2796:16-2798:5. The legitimacy of the acquisition of the Digital Bank has not been challenged, and there was no other relevant evidence regarding Account 2770; regarding whether any of the proceeds of the Fraud Scheme were ever deposited into Account 2770; or, for that matter, regarding whether Defendant Wang ever deposited *any* money into Account 2770 (she did not). Simply put, there is nothing in the record that would indicate there is a nexus between Account 2770 and Defendant Wang's wire fraud charge, let alone sufficient evidence to determine that the Government met its burden of showing, and the Court properly adjudicated, that the appropriate nexus exists for forfeiture of Account 2770 to be proper.

32. As to Count II, the Forfeiture Allegation states that, "[a]s a result of committing the

money laundering offense alleged in Count Two of this Information, YVETTE WANG, a/k/a "Yanping" a/k/a "Y," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1)[4], any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense." Superseding Information at 4. As to Count II, The Government "must prove the elements of forfeiture under 18 U.S.C. § 982(a)(1) by a preponderance of the evidence." *U.S. v. Beltramea*, 785 F.3d 287, 290 (8th Cir. 2015).

33.     The Superseding Information alleges that Defendant Wang committed conspiracy to launder money because Defendant Wang "knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions. . .and which in fact involved the proceeds of specified unlawful activity, to wit, proceeds of the wire fraud scheme alleged in Count One of this Information." Superseding Information at 3.

34.     It is unclear how Account 2770 could be forfeited as a result of the money laundering charge in Count II. From the allegations, the charge of money laundering arises from Defendant Wang engaging in financial transactions with the "proceeds of the wire fraud scheme alleged in Count One." Superseding Information at 3. As argued above, there is no evidence that funds in Account 2770 had any relation to the Fraud Scheme alleged in Count I (*see* ¶¶ 29-31, above) – there is no evidence that such funds "constitute[d] or [were] derived from proceeds

---

[4] 18 U.S.C. § 982(a)(1) provides that "[t]he court, imposing sentence on a person convicted of an offense in violation of section 1956 [the money-laundering statute] of this title . . . shall order that the person forfeit to the United States any property, real or personal, *involved in such offense*, or any property *traceable to such property*." 18 U.S.C. § 982(a)(1) (emphasis added).

traceable to the commission of" wire fraud. *See e.g.* 18 U.S.C. § 981(a)(1)(C). Since funds in Account 2770 were not Fraud Scheme proceeds, nor were they derived from Fraud Scheme proceeds, such funds could not serve as the basis for the money laundering charge in Count II and cannot be forfeited as part of Defendant Wang's conviction for Count II.

35. The overt acts that the Government alleges to support the money laundering charge further fail to show how the funds in Account 2770 can be subject to forfeiture. In the Superseding Information, the Government sets forth two acts evidencing money laundering.[5] Superseding Information at 3.

36. First, per the Superseding Information, on May 20, 2020, Defendant Wang opened a bank account in the name of GTV, which, notably, Account 2770 was *not*. Superseding Information at 3. On June 2, 2020, Defendant Wang transferred approximately $200 million to that account. *Id.* The funds transferred into the GTV account were from a JP Morgan Chase Bank account held by Saraca Media, Group, Inc. ("Saraca") (Guo Trial, 05/31/2024, 953:25-954:4; Guo Trial, 06/26/2024, 4359:1-14), *not* from Account 2770. There was never any testimony that any money from Account 2770 ever went into the Saraca JP Morgan Chase Bank account to then be transferred to the GTV account cited in the Superseding Information. Moreover, Account 2770 did not even exist in 2020.

37. The second act the Government alleges is that "on or about June 5, 2020," Defendant Wang "authorized a wire transfer of $100 million from GTV's parent company, Saraca Media, Group, Inc., to a high-risk hedge fund, for the benefit of Saraca and its ultimate beneficial owner, Guo's son." Superseding Information at 3-4. First, this plainly alleges that the money was

---

[5] Although the Government states that these two overt acts were "among others" that Defendant Wang committed in furtherance of the alleged conspiracy to launder money (Superseding Information at 3), these other acts have never been indentified.

14

transferred from a Saraca account, which Account 2770 was demonstrably not. Also, again, there was never any testimony that any money from Account 2770 ever went into a Saraca account. Moreover, once again, Account 2770 did not even exist in 2020.

38. As seen from the above argument, there are no allegations or relevant trial testimony regarding Account 2770 whatsoever, outside of Mr. Collins' testimony which, to the extent it is relevant at all, supports Petitioner's claim. The *only* actual reference in the record to Account 2770 as it relates to the Government's seizure is Defendant Wang's purported consent to forfeit it. However, "a defendant's consent to forfeiture [does not] abrogate the requirement that a nexus exist between the property sought for forfeiture and the conviction of offense." *Beltramea*, 785 F.3d at 291. As the Eighth Circuit stressed, "[t]he district court had an independent duty to *ensure* that the required nexus exists." *Id.* (emphasis added).

39. Here, there are no factual allegations in the Superseding Information, in the Original Forfeiture Order or the Forfeiture Order as to even an alleged nexus between Account 2770 and the offenses to which Defendant Wang pled guilty.

### B. Petitioner Has an Interest in Petitioner's Property Because Hamilton is the Legal Account Owner

40. Even putting aside the Government's failure to properly demonstrate that the funds in Account 2770 were part of any activity alleged in the Superseding Information, Petitioner's Property should be returned to Petitioner because Petitioner has a greater interest in it than does Defendant Wang, or, now, the Government.

41. Here, the Petitioner has a legal interest and right in the funds in Account 2770 by virtue of being the named owner of Account 2770 and having complete dominion and control over the funds in Account 2770. Thus, Petitioner has standing to challenge the Forfeiture Order.

15

### C. Petitioner Has a Superior Interest in the Petitioner's Property

42. Petitioner's interest in Petitioner's Property is absolutely superior to any interest that the Government or Defendant Wang may have in Petitioner's Property.

43. 21 U.S.C. § 853(n) is clear that, in addition to Petitioner's interest in the forfeited property, that Petitioner must demonstrate, by a preponderance of the evidence, that Petitioner's interest "renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner *rather than the defendant* or was superior to any right, title, or interest *of the defendant* at the time of the commission of the acts which give rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6)(A) (emphasis added).

44. Here, as set forth above, Defendant Wang never had any interest in Petitioner's Property or Account 2770; indeed, the record is entirely silent as to what the relationship is between Defendant Wang, the Fraud Scheme, and Account 2770.

45. It is axiomatic that neither the Government nor Defendant Wang can argue that they have a superior interest in a property in which they never had an interest. Likewise, Defendant Wang cannot forfeit her interest in a property in which she had no interest.

### D. Petitioner is Entitled to Costs and Attorneys' Fees

46. The Petitioner has been required to retain legal counsel and has incurred costs to file this petition asserting Petitioner's right to Petitioner's Property and to challenge the forfeiture of Petitioner's Property. Upon prevailing in this proceeding, Petitioner reserves all rights to recover attorneys' fees and costs incurred in connection with this Petition and may recover Petitioner's costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Federal courts have consistently held that § 853(n) proceedings are civil for the purposes of allowing a successful claimant to collect attorney's fees under the EAJA. *See United States v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009); *United States v. Douglas*, 55 F.3d 584, 588 (11th

Cir. 1995); *U.S. v. Bailey*, 2015 WL 1893610 at *20 (W.D.N.C. Apr. 27, 2015).

## IV.   **CONCLUSION**

47.   For the reasons stated above, the Petitioner has an interest in Petitioner's Property, which renders the Forfeiture Order invalid as to such property. *See e.g.* 21 U.S.C. § 853(n)(6)(A). Defendant Wang does not have any right, title, or interest in Petitioner's Property, and never did. Petitioner has proven, and can prove at any necessary hearing, by preponderance of evidence that the Forfeiture Order needs to be amended to exclude Petitioner's Property.

48.   Therefore, Petitioner respectfully requests that this Court: (1) grant this Petition; (2) amend the Forfeiture Order to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to the M&A Fund Investors or, in the alternative, to the Petitioner to return to the M&A Fund Investors; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant other relief that is necessary and just.

Dated: April 7, 2025                                        Respectfully submitted,

/s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman, Esq.
Jeremy W. Schulman, Esq.
SCHULMAN BHATTACHARYA, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, MD 20852
(240) 356-8550
jgavenman@schulmanbh.com
jschulman@schulmanbh.com

/s/ Paul W. Butler
Paul W. Butler, Esq.
BUTLER LEGAL STRATEGIES
1201 Connecticut Avenue, NW, Suite 531
Washington, D.C. 20036
paul@butlerlegalstrategies.com
*Counsel for Petitioner*

## ATTESTATION AND OATH

Pursuant to 21 U.S.C. § 853(n)(3), I attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of this claim is true and correct, to the best of my knowledge and belief.

Executed on this 7th day of April, 2025

HAMILTON OPPORTUNITY FUND SPC

By: E. Masub,

Name: Ehsan Masud

Title: Chief Financial Officer