IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>HO WAN KWOK, a/k/a  "Miles Guo," "Miles Kwok," "Guo Wengui," "Brother Seven," or  "The Principal,"<br><br>and<br><br>KIN MING JE, a/k/a "William Je,"<br><br>and<br><br>YANPING WANG, a/k/a "Yvette,"<br><br>Defendants. | Criminal No.:  23-cr-118 (AT)<br><br>COMBINED PETITION FOR RETURN OF FUNDS UNDER RESTITUTION, ANCILLARY PETITION, AND/OR CLAIM FOR REMISSION OF FUNDS SEIZED FROM 6,575 "MEMBERS" OF THE HIMALAYA EXCHANGE AS PURPORTED "VICTIMS"<br><br>Assigned to the Honorable U.S. District Court Judge Analisa Torres, Presiding Judge |

**COMBINED PETITION FOR RETURN OF FUNDS UNDER RESTITUTION, ANCILLARY PETITION, AND/OR CLAIM FOR REMISSION OF FUNDS SEIZED FROM 6,575 "MEMBERS" OF THE HIMALAYA EXCHANGE AS PURPORTED "VICTIMS"**

By this joint petition, Claimants/Petitioners, who are 6,575 Members of the Himalaya Exchange, respectfully demand the return of their own investment funds (their personalty) which they deposited and invested with the Himalaya Exchange ("HEX") but those funds were illegally seized by the United States of America ("Government").  Claimants also request interest at the statutory rate and administrative expenses, and payment of their attorneys' fees and costs and incorporates by reference and adopts all prior filings in this matter.

I.      GENERAL CONTEXT AND BACKGROUND

Counsel for the 6,575 Himalaya Exchange investors respectfully submits this Motion in

1

furtherance of procedural fairness and efficient administration of justice in the above-captioned matter. This filing builds upon the most recent two prior motions and a proposed order already before the Court. First, a consolidated motion was submitted on April 4, 2025 (ECF No. 612), seeking (1) modification of the claims process for seized assets and (2) leave to file financial and personal victim data under seal. That motion included multiple supporting exhibits (ECF Nos. 612-1 through 612-6). Counsel once again provided a framework for coordinated claims filing and sealed data protection.[1]

Second, a submission was filed on March 27, 2025 (ECF No. 514), addressing government conduct, the need for judicial oversight, and concerns about foreign influence and due process deficiencies related to the remission process. That response articulated structural flaws in the current asset forfeiture and restitution pathway and highlighted the risk of coercion or bias absent court supervision.

The instant petition is offered in furtherance of the relief outlined in ECF No. 612 and supported by the rationale and facts set forth in ECF No. 514. A proposed omnibus order is resubmitted herewith, encompassing all requested procedural modifications and confidentiality protections needed to ensure a transparent, fair, and secure process for the return of assets to innocent HEX investors.

These 6,575 Members are identified in Exhibits to this joint petition filed under seal, with the supporting information identified and described in prior filings and detailed below in which they hold a superior and valid interest. As detailed in prior filings and confirmed in the Government's Bill of Particulars (ECF No. 10), the location of most of these funds is known—they are held in trust accounts maintained by HEX for the exclusive benefit of my clients and

---

[1] Counsel inadvertently filed the wrong document as ECF 612-1 which was intended to be a proposed motion. The correct proposed order was filed today at ECF 643-1.

other HEX customers.

j. $4,643,744.70 in United States currency formerly on deposit in Account Number 7801000590 at FV Bank held in the name of "Himalaya International Reserves, Ltd.," seized by the Government on or about September 20, 2022;

k. $14,599,257.25 in United States currency formerly on deposit in Account Number 7801000254 at FV Bank held in the name of "Himalaya International Clearing, Ltd.," seized by the Government on or about September 20, 2022;

l. $7,715.00, in United States currency formerly on deposit in Account Number 7801000589 at FV Bank held in the name of "Himalaya International Financial Group, Ltd.," seized by the Government on or about September 20, 2022;

m. $11,538,579.87 in United States currency formerly on deposit in Account Number MBI10103-0000 at Mercantile Bank International held in the name of "G Club International Ltd.," seized by the Government on or about October 16, 2022;

n. $10,008,284.04 in United States currency formerly on deposit in Account Number MBI10133-0000 at Mercantile Bank International held in the name of "Himalaya International Clearing Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

p. $272,350,313.76 in United States currency formerly on deposit in Account Number MBI10138-0000 at Mercantile Bank International held in the name of "Himalaya International Reserves Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

q. $310,594.31 in United States currency formerly on deposit in Account Number MBI10139-0000 at Mercantile Bank International held in the name of "Himalaya International Financial Group Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

r. $1,187,278.87 in United States currency formerly on deposit in Account Number MBI10171-0000 at Mercantile Bank International held in the name of "Hamilton Investment Management Ltd.," seized by the Government between on or about October 16, 2022 and on or about March 10, 2023;

s. $43,782.71 in United States currency formerly on deposit in Account Number MBI10172-0000 at Mercantile Bank International held in the name of "G Fashion International Limited," seized by the Government on or about October 16, 2022;

## II.   IDENTITY OF CLAIMANTS WHO ARE COUNSEL'S CLIENTS

These 6,575 Members are clients represented by the undersigned counsel.

As is clear in the court record, at least two other law firms are also participating in representing investors whose funds were seized.  And many investors are petitioning independently, *pro se*.   However, this Counsel petitions on behalf of those who have chosen to be represented by him as his clients.

Some of Counsel's clients who invested in HEX also invested in other investment projects inspired by the philosophies and activism of Ho Wan Kwok (Miles Guo).  There are many investors who only invested in other activities and entities.  But the Government has been vague about these, reporting these by concept or general themes not always by exact entities.

Counsel and team have been sorting through thousands of email communications with Members of HEX.  As of 2:16 p.m. on March 4, 2025, undersigned counsel has approximately 6,575 clients under agreement.

Of these 6,575 clients, 3,539 were previously authenticated by HEX that also provided extensive identifying and transaction details including deposits, HDO, HCN and redemption information. Counsel is working to get from HEX – whose assets were seized hindering a response – this complete information for all 6,575 Members who are his clients.  Undersigned counsel is informed that it will take 4-6 weeks from any filing deadline for HEX to authenticate each customer along with victim loss information.

Removed from the total are approximately 117 former clients who terminated the attorney client relationship when rumors whipsawed the community that seemed to require victims to endorse the government's prosecution theory as a prerequisite to receiving funds return.

Members provided the necessary information in a closed setting where encrypted keys were stored separately from account information.  The Himalaya Exchange funds, held dollar to dollar [HDO] from initial investments made by my clients in protected custodial counts, could have been returned safely and securely, but that would have required bare minimal facilitation by the government.

We propose a similar framework of secure information that can be established and adopted here in as expedient a fashion as we accomplished for Himalaya Exchange customers.

Counsel has proffered and hereby proffers that the complete identifying information and transaction history of each of 3,539 Members out of the 6,575 total are available right now for the Court's of the Government's inspection under secure conditions.  Therefore, Counsel asserts

that the Government has received this information because it is available on proffer at the whim of the Government to agree to secure and confidential procedures any time the Government wants. ECF 612 p. 5-6. For months, Counsel has asked the Government to work out with him such a process and the Government has ignored the question.

Under seal, Counsel has submitted a preliminary PDF marked as *Exhibit A*, which includes the following columns: **HID#** (Column A), **Affidavit on File** status (Column B) (referenced as *Exhibit B*), **Current HCN** (Column C), **Current HDO** (Column D), **Total Deposits** (Column E) and **Redemptions** (Column E). For any row where figures or dashes appear alongside an HID#, this indicates that the HID# has been authenticated. A dash denotes that HEX returned null values for that entry. Cells marked "n/a" indicate that HEX has not yet authenticated the corresponding data or the HID# itself.

### III.     PETITION FOR RETURN OF THEIR SEIZED INVESTMENT FUNDS

Claimants demand return of their investments as authorized by 18 U.S.C. § 3771; 18 U.S.C. § 983(a)(1)(A)(i), the Bank Robbery Act (18 U.S.C. § 2113), common law larceny by trick and false pretenses, 21 U.S.C. §§ 853(i) and (n), Rule 41(g), 42 U.S.C. § 10607, Fed. R. Crim. P. 32.2(b), and principles of unjust enrichment.

Under the Crime Victim's Reform Act, any redemption process should enable victims to perfect their claims and authenticate under an updated 18 U.S.C. § 983(a)(1)(A)(i) process that complies with 18 U.S. Code § 3771. Section 983 was designed before the emergence of cryptocurrency exchanges and innovations in human rights capital creation systems (bit coin, Himalaya Coin, etc.) this growing gulf under Section 3771 may be trumped by the fact that victims are being forced by DoJ under court supervision to expose their personal information to foreign governments.

## IV. RESTITUTION IS REQUIRED UNDER CONSTRUCTIVE TRUST

Counsel has repeatedly pointed out that the funds of HEX seized by the U.S. Government were effectively trust funds (HDO reserve funds) held for the benefit of holders of HDO who have a right to redeem.

Here, the investors and claimants under each organization are entitled to the return of _their_ specific funds that were taken from that particular organization. The Government and Court are not authorized to mix it all up together and then sprinkle a little around to everyone. Creditors cannot claim funds from a different organization with whom they never did business.

The Second Circuit has held that "a constructive trust qualifies as a 'legal right, title, or interest in the property' that 'may be a superior interest' to a defendant's interest for the purposes of a forfeiture statute analogous to 21 U.S.C. § 853(n)(6)(A)." *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011). "A constructive trust is an equitable remedy, necessarily flexible to accomplish its purpose." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) (emphasis added). "Its purpose is to prevent unjust enrichment, although unjust enrichment does not necessarily implicate the performance of a wrongful act. . .What is necessary is that the court identify a party who is holding property under such circumstances that in equity and good conscience he ought not to retain it." *Id*. (internal citations omitted). "Whether a party is unjustly enriched is a legal conclusion reached through the application of principles of equity. . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief. . . Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain." *Id.* (internal

citations omitted). The New York Court of Appeals outlined several factors to be considered in determining whether a constructive trust should be imposed in certain circumstances, including "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Sharp v. Kosmalski,* 40 N.Y.2d 119, 121 (1976).

Here, members deposited funds to obtain HDO and any HDO, which is a stable coin, backed by the dollar and, therefore, this reserve is not a standalone pool of money. A stablecoin is a digital asset that is pegged to another asset with a stable price. It can be a fiat currency (such as USD, EUR, GBP), other assets (such as gold or oil), or even other cryptocurrencies. In the case of HEX, each dollar of the seized funds is attached to an HDO.

Sprinkling HEX funds around to various creditors of the criminal Defendants would result in unjust enrichment to the benefit of them or the Government since the Government is now retaining Claimants' funds without any legal cause to do so. See, e.g., *U.S. v. Coluccio*, 51 F.3d 337, 340 (2nd Cir. 1995) (finding that imposition of a constructive trust was proper where, amongst other reasons, Government's forfeiture caused a breach of an implied promise); *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1159 (2d Cir. 1994) (finding a constructive trust appropriate where "The government's forfeiture forced a breach of that promise that may result in a potentially unjust enrichment of the government (and commensurate unjust impoverishment of [the plaintiff]).").

Accordingly, Petitioner has shown that a constructive trust should be imposed over Petitioner's Property. Such a constructive trust "qualifies as a 'legal right, title, or interest in the property' that 'may be a superior interest' to a defendant's interest for the purposes of a forfeiture statute analogous to 21 U.S.C. § 853(n)(6)(A)." *Willis,* 652 F.3d at 242.

And they point out that: "When a party can directly trace its assets, without resorting to

fictions or presumptions, a constructive trust is available even in cases involving multiple fraud victims." *U.S. v. Ovid*, 2012 WL 2087084, *7 (E.D.N.Y., Jun. 8, 2012). "[C]ourts are not free to disregard the law of constructive trusts when a claimant can directly trace its property, even if this leaves one innocent victim better off than another equally innocent victim." Id. The "orthodox approach to multiple-fraud cases" is to "return[] identifiable assets to their owners, turning to pro rata distribution only when specific identification or transactional tracing is impossible." Id. at *8 (citing Restatement (Third) of Restitution & Unjust Enrichment, § 59 Reporter's Note G, at 437).

Therefore, the funds which the U.S. Government seized were held in trust, at least a constructive trust, for the benefit of the Members who are the HDO holders. The seizure of the bank accounts wasn't sufficient and it also seized the website making it more difficult to contact and authenticate customers for forfeiture process purposes while subjecting HCN holders to outright confiscation of billions by the US government. This is perhaps the most compelling justification for the Court to grant immediate relief and return the funds.

## V.    ATTORNEYS' FEES

Petitioner reserves all rights to recover attorneys' fees and costs incurred in connection with this Petition and may recover Petitioner's costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Federal courts have consistently held that § 853(n) proceedings are civil for the purposes of allowing a successful claimant to collect attorney's fees under the EAJA. See *United States v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009); *United States v. Douglas*, 55 F.3d 584, 588 (11th Cir. 1995); *U.S. v. Bailey*, 2015 WL 1893610 at *20 (W.D.N.C. Apr. 27, 2015). This means payment from the U.S. Treasury not by sacking the funds of the innocent investors.

## VI.  CONCLUSION

For all the reasons set forth above and in prior filings that we incorporate and adopt by reference, we respectfully request that the Court order the return of the funds of each HDO Member of the HEX which was seized by the U.S. Government.   Justice demands swift and decisive action to halt this ongoing harm and ensure that the rights of innocent victims are fully protected. Anything less would perpetuate the profound injustices already inflicted upon these individuals.

Dated:  April 7, 2025                           RESPECTFULLY SUBMITTED

/s/ Brad Geyer
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S.  303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the Southern District of New York.

/s/ Brad Geyer
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S.  303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708