USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jan 14, 2026

# In re: Chunk Chyi (realname: Chunhong Qi)

181 E. Tasman Dr. Suite 20. PMB#364

San Jose CA 95134

baoliao2019@gmail.com

+1(510)371-5615

## To:

Clerk of Court

United States Court of Appeals for the Second Circuit

Thurgood Marshall U.S. Courthouse

40 Foley Square, New York, NY 10007

Dear Clerk of the Court:

Please find enclosed materials for filing petition:

- **PETITION FOR WRIT OF MANDAMUS**
- **Exhibit A (SDNY Order 528)**
- **Exhibit B (SDNY Order 596)**
- **Exhibit C Second circuit Order for case 25-2726**
- **Exhibit D Second circuit case 25-2726 Dkt. 26, Exhibit D, Expanded Supplement Mandamus Petition**
- **Exhibit E Second circuit case 25-2726 Dkt. 29, LETTER advising the Court of recent developments**
- **Exhibit F Evidence showing order 596 is based on false factual premises**
- **A money order for 600 filing fee**
- **Certificate of service**

Respectfully submitted,

Chunk Chyi (real name: Chunhong Qi),
Executed on January 7, 2026

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

In re: Chunk Chyi (real name: Chunhong Qi),
Victim in *United States v. Kwok, et al.*,
1:23-CR-118-1 (AT)

RECEIVED 2026 JAN 13 AM 9: 57 U.S. COURT OF APPEALS SECOND CIRCUIT

# PETITION FOR WRIT OF MANDAMUS

## I. Introduction

I, Chunk Chyi (real name: Chunhong Qi), a crime victim appearing pro se under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, respectfully petition this Court for a writ of mandamus compelling Judge Torres to recuse from all proceedings in this matter.

**I was the first person in this case to intervene as a pro se petitioner to expose procedural failures and injustices, raising concerns about prosecution procedural problems, improper creditor registration, trustee potential misconduct, and potential judicial bias**. I flagged these issues several months ago. Since then, another independent pro se petitioner Ryan Bai's subsequent filings—including his SDNY motion (Dkt. 733), original Mandamus Petition (2nd Cir. 25 - 2726), and a recently docketed Expanded Supplemental Mandamus Petition and a following letter (25-2726 Dkt. 26, 29) (Exhibit D, E) , as well as a court order from this Court regarding Ryan's original Mandamus Petition (SDNY Dkt. 767)—**have confirmed the validity of the core issues I identified.** What I previously flagged as procedural problems, trustee potential misconduct, judicial bias has now been corroborated by independent filings, this Court's order and verified evidence. In essence, the record now shows that the warnings I sounded months ago were prescient and accurate.

**Issue Presented:**

Whether a district judge must recuse under 28 U.S.C. § 455(a) where the judge issued filing restrictions against a pro se petitioner raising procedural challenges based on demonstrably false factual premises, failed to provide the notice and opportunity to be heard required under *Moates v. Barkley*, 147 F.3d 207 (2d Cir. 1998), coerced the petitioner into assuming a disclaimed procedural status, and preserved the resulting coerced filing as part of the official record without cure or disclaimer.

## II. Background

Previously, I filed a mandamus petition in this Court after intervening **as a victim** in SDNY under Dkt. 679. At that time, I submitted multiple victim motions, but the district court **suppressed and ignored my filings**, effectively denying me the procedural protections guaranteed under the Crime Victims' Rights Act. In response, I sought a writ of mandamus directing the district court to docket my suppressed motions. That petition was returned by this Court on November 19, 2025, without being docketed or considered.

This petition, however, is entirely different. Recent developments—including Ryan Bai's mandamus filings in Case 25-2726 and his December 26, 2025 docket referencing my Dkt. 507, which exposed judicial bias—**corroborate the concerns I previously raised in SDNY**. Ryan's Expanded Supplemental Mandamus Petition (Exhibit D) further supports the existence of systemic procedural failures and retaliatory effects experienced by victims who raised procedural irregularities. This closely mirrors my own experience before Judge Torres. Taken together, these independent developments substantiate the accuracy of my earlier filings and support a reasonable inference of ongoing risk to victims and an appearance of judicial bias in this matter.

### Statement Regarding Prior Pro Se Filings

This petition is submitted with full awareness that my earlier filings in the Southern District of New York were made pro se and under objectively constrained circumstances, including limited access to information and the absence of legal assistance. To the extent those filings lacked technical polish, such limitations were procedural in nature and did not affect the substance of the concerns raised.

Subsequent independent filings and court records have confirmed the accuracy and relevance of those concerns. This petition reflects my continued good-faith effort to present the same issues in a procedurally focused and legally structured manner, with full respect for the Court's rules and authority.

## III. Disputed Order Dkt. 528, and Improper Order Dkt. 596, Latter of Which Is Based on a Completely False Factual Premise

### A: Disputed Order 528:

As reflected in Order No. 528, I filed SDNY Dkt. Nos. 505, 507, 508, 510, 513, 517, 519, 522, and 524 as a petitioner, for the purpose of bringing to the Court's attention a series of procedural irregularities in this case. At the time of those filings, due to my limited English proficiency and limited legal training, my language and presentation were imperfect. I subsequently acknowledged these limitations and expressed regret for any lack of clarity or unintended tone in my later submissions. However, the inherent limitations of a pro se petitioner do not excuse, and cannot be used to obscure, the procedural deficiencies reflected in Order 528 and Order 596.

**Procedural Shielding and Vexatious Label:**

In the above filings, I raised critical procedural concerns regarding the forfeiture proceedings, specifically questioning the conduct of Attorney Greyer, Trustee Luc, and the Prosecution:

In Dkt. 508, I moved to remove Attorney Greyer as counsel based on allegations of fraud upon the individuals he purported to represent. At the time, Greyer acted as the representative for thousands of crime victims, while simultaneously occupying the position of an interested third party whose own conduct was directly implicated in the procedural irregularities at issue. In Dkt. 510, I questioned the procedural integrity of the remission process itself.

In Dkt. 519, I again sought Greyer's removal. These concerns were subsequently corroborated by independent filings. In Dkt. 709, Beibei Zhu alleged misconduct by Attorney Greyer and sought $100,000 in claims arising from that conduct, and in Dkt. 712, Greyer's counsel terminated the

representation of Ms. Zhu. In Dkts. 522 and 524, I raised additional procedural concerns regarding Trustee Luc's handling of creditor registrations in the related bankruptcy proceedings. Similar creditor registration issues were later raised independently by Ryan Bai in SDNY Dkt. 733 and in his Second Circuit mandamus proceedings (SDNY Dkt. 765; Second Circuit Order, SDNY Dkt. 767), which gave rise to fraud-upon-the-court concerns. **The Second Circuit did not reject the substance of those allegations, but instead instructed that any Rule 60(d) relief be sought after sentencing.**

Despite the substantive significance of these filings which are closely relevant to the proceedings, Judge Torres' Order No. 528 largely avoided adjudicating my procedural claims. Instead, the Court characterized the filings as "improper," beyond the scope of the criminal prosecution, or potentially harassing, and denied the motions on these grounds. By emphasizing procedural labels and my filing behavior, **the Court shifted attention away from the substantial procedural issues that the filings revealed, effectively shielding the underlying concerns from review.** The vexatious / improper characterization served to mask the merits of my claims, precluding meaningful adjudication of valid procedural objections and limiting access to the Court's remedial processes. **This constitutes an example of procedural shielding: the Court used disciplinary or procedural labels as a substitute for adjudicating legitimate procedural claims, thereby circumventing review of substantial issues concerning the remission process, counsel misconduct, and creditor registration.**

## B: Improper Order 596 Based on False Factual Premise

Order 596 was issued less than **twenty-four hours** after the entry of Order 528. In that order, the district court reiterated that any "improper filings" could result in the imposition of a court injunction. Relying on the fact that I and Beibei Zhu submitted several filings within the twenty-four-hour period following Order 528, the court then imposed a pre-filing review requirement on me and Beibei Zhu, under which any future submissions must be reviewed and approved before they may be docketed.

Order 596 thus conditions access to the docket on prior judicial screening and operates as a functional filing restriction which applied to me and Beibei Zhu.

However, **I only recently discovered that the factual premise underlying this order—particularly the pre-screening restriction imposed on me—is demonstrably based on a false factual premise.**

Specifically, Order 596 rests on the assumption that my filings (later docketed as Dkt. 554, 555, 556, and 557) were submitted after Order 528 was issued and docketed. **That assumption is materially false.** As reflected in Exhibit F, I transmitted these filings to the Southern District of New York on **April 3, 2025, China time**. By contrast, the **public upload time of Order 528 was April 3, 2025 at 4:30 PM Eastern Time**, as shown in Exhibit F which I captured from Courtlistener, **the upload time of Order 528 corresponds to April 4, 2025 at 4:30 AM in China time.**

**Accordingly, my submissions at Dkt. 554, 555, 556, and 557 were sent before Order 528 was publicly docketed or made accessible**, making it temporally impossible for those filings to have violated Order 528 or to have been submitted "in the twenty-four hours following" that order.

Order 596 thus rests on a false factual premise—namely, that I engaged in post-Order-528 filings in defiance of a court directive. **Because that premise is incorrect, the pre-screening restriction imposed on me lacks any factual foundation.**

## C: Unlawful Suppression of Filings Based on a False Factual Premise

As I mentioned in the beginning, I sought a previous mandamus relief in November because my CVRA motions were suppressed by the SDNY. Because the pre-screening regime imposed by Order 596 was based on a false factual premise, the Court's continued refusal to docket my post-679 filings constitutes an ongoing violation of procedural due process and an abuse of judicial discretion, violation of my CVRA rights, amounting to unlawful suppression of access to the court.

## D: Procedural Due Process Violations and Improper Vexatiousness Determination (Order 596)

Order 596 imposes a de facto filing restriction by subjecting all future filings to judicial pre-screening. Although the order avoids labeling the restriction as an

"injunction," its functional effect is indistinguishable from one. Order 596 not only based on false factual premises, but also violates binding Second Circuit precedent: a district court may not impose such a restriction without providing the affected litigant with advance notice and a meaningful opportunity to be heard. ***Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998).** Order 596 provided neither. The absence of notice and opportunity to be heard renders the order procedurally infirm.

This due process failure was compounded by the compressed temporal escalation between Orders 528 and 596. Order 596 was issued less than twenty-four hours after Order 528, depriving me of any realistic opportunity to become aware of the prior order. Due process requires not merely theoretical notice, but notice that is meaningful in practice. **Even assuming arguendo that the factual premise of Order 596 were valid**, the Court's compressed escalation nevertheless resulted in filings made before I had actual, practicable notice of Order 528 being retroactively treated as grounds for heightened restrictions—**creating a procedural trap that violates fundamental fairness and due process.**

In addition, Order 596 fails to apply the required principles of narrow tailoring and least restrictive means. The Second Circuit requires that any filing restriction be individualized, proportionate, and narrowly tailored to address the specific conduct at issue. Order 596 contains no analysis of less restrictive alternatives, such as limiting subject matter, clarifying permissible filing categories, or addressing specific filings individually. Instead, the court imposed the most severe available mechanism—universal pre-screening of all future filings—without any proportionality analysis.

The order is also overbroad and non-individualized. It applies a blanket screening regime to all future filings, without distinguishing among types of submissions, legal bases, or subject matter. The order does not identify which specific filings necessitated such a sweeping restriction, nor does it confine the restriction to conduct plausibly related to the perceived problem. Such overbreadth chills legitimate access to the court and exceeds what is necessary to protect docket integrity.

Finally, Order 596 lacks sufficient factual findings to support a determination of vexatiousness. The order relies on conclusory assertions that I "abused the public's right of access" and engaged in "vexatious" conduct, without making

filing-specific findings, explaining why ordinary denial was inadequate, or demonstrating how the conduct satisfied the Second Circuit's threshold for vexatious litigation. Conclusory characterizations cannot support such an extraordinary remedy. Absent detailed, individualized findings, the imposition of a filing restriction cannot stand.

## IV. False Factual Premises Underlying Order 596 and the Escalating Procedural Violations Triggered by Orders 528 and 596

Order 596, based on demonstrably false factual assumptions, imposed mandatory pre-filing review and contemplated injunctions against me. Under these coercive conditions, I had no practicable way to preserve access to the Court other than filing Motion 679 and assuming a procedural posture I had repeatedly disclaimed—namely, that of a "crime victim." This was a compelled response to the Court's own directives, not a discretionary choice, and it triggered a cascading series of procedural distortions that amplified the challenges and inconsistencies in the official record.

### A. Judicial Coercion and Internally Inconsistent Record

Orders 528 and 596 produced a court-created contradiction: Order 528 relied on my disclaimers of victim status (Dkts. 513, 517), yet the pre-screening threat in Order 596 compelled my victim-status filing in Motion 679. This inconsistency reflects judicial coercion, not litigant vacillation, and contaminated the factual foundation for subsequent review.

### B. Due Process Violations and Chilling Effect

Pre-filing restrictions and vexatious labels exerted pressure to alter my legal posture, suppressing legitimate procedural objections. This coercion chilled participation and signaled to other pro se participants that procedural engagement could trigger punitive measures, undermining fundamental fairness.

### C. Failure to Cure Record Distortion and Resulting Appearance of Partiality

Motion 679 expressly notified the Court that my assumption of victim status was coerced and expressly disclaimed. Upon docketing Dkt. 679, the Court was therefore on notice of the coercive circumstances under which the filing was made and of the resulting inconsistency in the record. Nevertheless, the Court failed to correct the record, disclaim reliance on the coerced filing, or vacate the coercive predicates that produced it. By leaving the compelled procedural posture embedded in the docket, the Court preserved a record that appears neither neutral nor reliable. Where a court is expressly notified that a litigant's procedural posture was assumed under coercion, the court bears an affirmative obligation either to cure the resulting distortion of the record or to disclaim reliance on such compelled filings. The failure to do so transforms judicial inaction into participation in the coercive effect itself, thereby compounding the harm and giving rise to an appearance of partiality under 28 U.S.C. § 455(a), while exacerbating the chilling effect on legitimate participation.

## D. Judicial Paradox: From Challenge to Compelled Victim

Narrowly tailored procedural challenges raised in Dkt. 513 and Dkt. 557, concerning the accuracy and integrity of the victim list, were summarily terminated. Yet, through subsequent coercive directives, the Court transformed my pro se procedural challenge into compelled participation within the very victim category it had declined to scrutinize. This paradox undermines procedural integrity.

## E. Cumulative Abuse of Procedure and Discretion

Orders 528 and 596 triggered a chain of coercion and procedural distortion. Threats of injunctions, pre-screening based on false premises, and lack of individualized proportional analysis forced me to assume victim status, creating internally contradictory entries and chilling lawful participation.

## F. Evidence of Judicial Bias and Selective Enforcement

As shown in Ryan's Supplemental Mandamus (25-2726, Dkts. 26, 29), third-party filings by counsel were accepted, while pro se victim motions were suppressed or restricted. Despite acknowledging my Motion 507, the Court did not address bias concerns. This pattern demonstrates selective docketing,

unequal treatment, and inconsistent enforcement against unrepresented participants.

## V. Reasons for Filing and Relief Requested

### Standards for Mandamus Relief and Continuing Risk of Procedural Coercion

Mandamus relief is warranted under the well-established *Cheney* standard, which requires (1) that the petitioner has a clear and indisputable right to the relief sought, (2) that the issuing court has a nondiscretionary duty to act, and (3) that no other adequate means exist to obtain the relief.

The existence of Order 596(Exhibit B) exerted significant procedural pressure, forcing me to alter my status in order to continue participating safely in the proceedings, detailed in Dkt. 679. The existence of the order placed me in a position where my continued participation carried a reasonably foreseeable political risk due to my residence in mainland China. Subsequent filings, including Ryan Bai's submissions in this Court (25-2726), further illustrate a documented pattern reflected on the SDNY docket in which the personal identifying information of pro se participants who raised procedural concerns was publicly disclosed, creating foreseeable safety and retaliation risks.

Taken together, these circumstances demonstrate that:

1. I have a clear and indisputable right to relief, as my statutory rights under the CVRA were effectively constrained;

2. The Court has a nondiscretionary duty to act, given the coercive effect and the procedural irregularities that forced me into involuntary victim status;

3. No other adequate remedy exists within the district court, as prior attempts to assert these rights pro se have been systematically blocked or suppressed.

**Recusal is independently required under 28 U.S.C. § 455(a) because the district judge has become a material participant in the disputed procedural history. The relief sought necessarily requires review of the factual**

**premises, coercive effects, and procedural consequences of Orders 528 and 596—orders issued by Judge Torres herself.**

As described above, Orders 528 and 596 did more than manage the docket. Through threats of filing injunctions and mandatory pre-screening, the court employed coercive measures that forced a pro se participant to assume a procedural posture—crime victim status—that he had repeatedly and expressly disclaimed, as the only practicable means of preserving safety and continued access to the court. A reasonable observer would question the neutrality of a judge whose own coercive actions materially shaped a party's procedural identity and the resulting record.

That appearance of partiality is reinforced by a documented pattern of selective enforcement. As shown in Ryan Bai's Expanded Supplemental Mandamus Petition and related filings (Case No. 25-2726, Dkts. 26, 29), as mentioned in section IV, 7, third parties represented by counsel were permitted to file motions and raise procedural objections, while pro se victim motions were suppressed or subjected to restrictive directives. Although statutory protections for non-defendants under 18 U.S.C. § 853(n) and the CVRA serve analogous protective purposes, filings under § 853(n), including ECF No. 777, were accepted, while CVRA-based victim motions were blocked.

**Taken together, the court's reliance on demonstrably false factual premises, its coercive imposition of an unwanted procedural role, and its selective enforcement of docket access and statutory protections actively contaminated the judicial record itself. Faced with explicit threats of exclusion and pre-screening, I was compelled to file Dkt. 679 and to assume a procedural status I had consistently disclaimed. Although no further sanctions followed, the court—having docketed Dkt. 679 and thus being fully aware that the submission was made under coercive conditions—failed to cure, correct, or clarify the resulting record.**

By leaving in place a record entry generated under coercive conditions and grounded in false premises, the court transformed a contested procedural dispute into a self-generated record artifact. Such record contamination is not a collateral defect; it undermines the accuracy, neutrality, and reliability of the record on which appellate review necessarily depends. Where a court creates the conditions that force a litigant's filings and then

preserves those filings as authoritative components of the record, a reasonable observer would question whether impartial adjudication has been maintained. Under 28 U.S.C. § 455(a), recusal is therefore required to restore public confidence in the integrity of the judicial process.

## VI. Based on the foregoing, I respectfully request that this Court issue a writ of mandamus directing the following relief:

1. Immediate relief vacating, suspending, or otherwise nullifying, as applied to me, the operative and coercive effects of Orders 528 and 596 (Exhibits A and B), including any pre-screening requirements, filing restrictions, or characterizations of vexatiousness directed at me, to the extent such orders were predicated on false factual premises or operate to compel a procedural posture I expressly disclaimed, interfere with my participation in the proceedings, or expose me to ongoing foreseeable risk.

2. Any additional relief the Court deems necessary to ensure that my statutory rights under 18 U.S.C. § 3771 is fully protected and that my participation in the proceedings is not further compromised by selective enforcement, intimidation, or coercion.

3. **Recusal of Judge Torres from all proceedings related to United States v. Kwok, et al., 1:23-CR-118-1 (AT), pursuant to 28 U.S.C. § 455, due to demonstrated judicial bias, selective enforcement, and coercive treatment of pro se petitioners, including the issuance of Order 596 premised on false factual assumptions, the coercive transformation of a litigant's procedural status, and the resulting judicially manufactured and internally inconsistent record that suppresses and distorts statutory rights under the Crime Victims' Rights Act (CVRA).**

Respectfully submitted,
Chunk Chyi (real name: Chunhong Qi)
January 7, 2026
+1(510)371-5615
baoliao2019@gmail.com
US mailing address: 181 E. Tasman Dr. Suite 20. PMB#364, San Jose, CA95134

# Exhibit A

## SDNY Order 528

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

MILES GUO, KIN MING JE,
and YVETTE WANG,

                              Defendants.

ANALISA TORRES, District Judge:

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                │
│ DATE FILED:   4/3/2025               │
└─────────────────────────────────────┘
```

23 Cr. 118 (AT)

**ORDER REGARDING
LETTERS AND MOTIONS
FROM NONPARTIES**

This order concerns certain nonparty filings and email correspondence the Court has received in connection with this case.

There are four parties to this case: the United States of America, Miles Guo, Kin Ming Je, and Yvette Wang. No other party has standing to intervene in this case or to file any motion, letter, document, or request other than a third-party petition under 21 U.S.C. § 853(n), *see United States v. Kozeny*, No. 05 Cr. 518, 2011 WL 1672473, at *3 (S.D.N.Y. Apr. 29, 2011), or a motion under the Crime Victims' Rights Act ("CVRA"), which applies only to persons "directly and proximately harmed" by a defendant's commission of a federal offense, 18 U.S.C. § 3771(e)(2)(A); *see id.* § 3771(a), (d)(3), (d)(6).

By letter dated April 1, 2025, a nonparty identified as Bei Bei Zhu filed a "Motion to Intervene Pro Se." ECF No. 526 (capitalization altered). The nonparty seeks to intervene to "[a]ccess relevant evidence and court filings." *Id.* at 2. Access to evidence or court filings is not a valid basis to intervene in a criminal case because all court filings and evidence in the record, except materials properly under seal, are available to the public. The nonparty further seeks to intervene to "[p]rovide evidence that [their] rights have been violated" and to assert claims related to "potential victim compensation or asset recovery." *Id.* To the extent the nonparty has any such claims, the nonparty may pursue such claims by complying with the procedures set forth in 21 U.S.C. § 853 or the CVRA, which the nonparty has not done here. Finally, the nonparty seeks to intervene to offer "testimony or evidence" related to the criminal charges at issue. *Id.* As a nonparty to a criminal case, Bei Bei Zhu lacks standing to intervene for the purpose of offering unsolicited testimony or evidence. Accordingly, the motion at ECF No. 526 is **DENIED**.

The same nonparty has also filed a motion to "unseal the list of victims" in this case. ECF No. 527. In the motion, the nonparty claims to have "never received a victim notification" under the CVRA and wishes to know whether the nonparty "appears in [the Government's] victim list." *Id.* at 1. Accordingly, the Court directs the Government to investigate the matter and, if appropriate, to communicate with the nonparty directly. To the extent the nonparty seeks to unseal all sealed or redacted court filings concerning victims' identifying information, the motion is **DENIED** for lack of standing and, alternatively, on the merits.

Another nonparty identified as Chunk Chyi has filed near-daily letters on the docket for the last two weeks. *See* ECF Nos. 505, 507, 508, 510, 513, 517, 519, 522, 524. With the exception of ECF No. 505, which may be liberally construed as a *pro se* petition under § 853(n), the filings by Chunk Chyi are improper. Chunk Chyi has repeatedly disclaimed victim status, *see, e.g.*, ECF Nos. 513, 517, and numerous of Chunk Chyi's filings concern private matters beyond the scope of this criminal prosecution, *see, e.g.*, ECF Nos. 508, 519, 524. Additionally, certain filings by Chunk Chyi could be construed as threatening or harassing to the Government and the victims of Defendants' crimes. *See, e.g.*, ECF Nos. 517, 522. Accordingly, the nonparty motions at ECF Nos. 508, 510, 519, 522, and 524 are **DENIED**. Any further filings by Chunk Chyi or any alias or representative of Chunk Chyi in violation of this Order or applicable Court rules may be construed as frivolous, vexatious, or harassing, and may subject the filer to a permanent filing injunction.

Finally, the Court has received numerous unsolicited, nonparty email communications made directly to the Chambers email account over the last several months. Such communications are prohibited. Any communications with the Court must be directed to the Clerk of Court and/or the *Pro Se* Intake Unit, and must be filed in accordance with Court rules.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 508, 510, 524, 526, and 527, and to mail or email a copy of this order to nonparties Bei Bei Zhu and Chunk Chyi.

SO ORDERED.

Dated: April 3, 2025
     New York, New York

**ANALISA TORRES**
United States District Judge

# Exhibit B

**SDNY Order 596**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

        -against-

MILES GUO, KIN MING JE,
and YVETTE WANG,

                    Defendants.

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:   4/4/2025 |

23 Cr. 118 (AT)

**ORDER REGARDING
LETTERS AND MOTIONS
FROM NONPARTIES**

ANALISA TORRES, District Judge:

        By order dated April 3, 2025, the Court explained the limited circumstances in which a nonparty may file a letter, motion, or other filing in a criminal case. ECF No. 528. The Court discussed specific filings by individuals who have identified themselves as Chunk Chyi and Bei Bei Zhu. *Id.* The Court explained why these individuals' filings were improper and, in some instances, could be construed as threatening, harassing, or—at a minimum—vexatious. *See id.* The Court advised that further improper filings could subject the filers to a permanent filing injunction. *See id.*

        In the twenty-four hours since the Court's order was docketed, Chunk Chyi and Bei Bei Zhu have filed six additional improper filings. *See* ECF Nos. 553–57, 582. Accordingly, the Court finds that Chunk Chyi and Bei Bei Zhu are vexatious nonparties who have abused the public's right of access to the Court in clear violation of Court orders. The Court **ORDERS** that any further filing by Chunk Chyi or Bei Bei Zhu, or any aliases or representatives thereof, shall be screened and docketed only if the Court determines that the filing is made in accordance with applicable court rules, in good faith, and with a proper basis under the law.

        The requests filed by nonparty Carolyn Sun at ECF Nos. 559 and 568 are **DENIED** for the reasons stated in the Court's April 3 order.

        The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 519, 557, 559, and 582.

        SO ORDERED.

Dated: April 4, 2025
       New York, New York

                           ANALISA TORRES
                     United States District Judge

# Exhibit C

## Second Circuit Order on 25-2726

S.D.N.Y. – N.Y.C.
23-cr-118
Torres, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second
Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square,
in the City of New York, on the 26th day of November, two thousand twenty-five.

Present:

Dennis Jacobs,
Joseph F. Bianco,
   *Circuit Judges*,
Victor A. Bolden,
   *District Judge.* \*

---

In Re: Ranyue Bai,                                                    25-2726

           *Petitioner*.

---

Petitioner, pro se, has filed a petition for a writ of mandamus directing the district court to cease
suppressing his future filings, docket his submitted but undocketed motions, and rule on his
pending Rule 60(d)(3) motion. Upon due consideration, it is hereby ORDERED that the
mandamus petition is DENIED because Petitioner has not demonstrated that his right to the writ
is clear and indisputable, and that granting the writ is appropriate under the circumstances. *See
Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004).

In view of the large number of submissions received by the district court, which we trust the court
will address expeditiously, Petitioner's mandamus petition as to docketing his submissions is
denied without prejudice to renewal if the district court fails to docket the submissions within a
reasonable time.

---

\* Judge Victor A. Bolden, of the United States District Court for the District of Connecticut,
sitting by designation.

CERTIFIED COPY ISSUED ON 11/26/2025

Likewise, the denial as to his Rule 60(d)(3) motion is without prejudice to renewal if the district court fails to take action within a reasonable time after sentencing in the underlying criminal case. *See Cheney*, 542 U.S. at 380–81; *United States v. Magassouba*, 544 F.3d 387, 411 n.16 (2d Cir. 2008).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

# Exhibit D

## Case 25-2726 Dkt. 26 Expanded Supplement Mandamus Petition

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Case No. 25-2726

In re Ryan Bai ▰▰▰▰▰▰▰▰▰▰ Petitioner

# SUPPLEMENTAL PETITION FOR EXPANDED MANDAMUS RELIEF DUE TO SDNY'S RETALIATORY PII DISCLOSURE

To the Clerk of Court and the Honorable Judges of the Second Circuit:

## I. INTRODUCTION

I, Ryan Bai ▰▰▰▰▰▰▰▰▰▰ a crime victim appearing pro se under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, respectfully move this Honorable Court to expand the scope of my pending mandamus petition (docketed October 28, 2025), in light of the Southern District of New York's retaliatory disclosure of my personally identifiable information ("PII") in United States v. Ho Wan Kwok, No. 1:23-cr-00118-AT (S.D.N.Y.), Dkt. 765. SDNY's retaliatory public filing has impaired this Court's ability to conduct independent mandamus review, by exposing the CVRA victim-petitioner and chilling protected participation, thereby interfering with this Court's jurisdiction.

This filing seeks not to reopen the merits of any criminal conviction, but to invoke this Court's supervisory authority under 28 U.S.C. § 1651(a) to remedy a structural collapse of due process and protect the integrity of ongoing proceedings.

## II. BACKGROUND

After the SDNY repeatedly refused to docket my two prior victim motions, I sought mandamus relief in this Court. The Second Circuit docketed my original mandamus petition on October 28, 2025.

However, on October 29, the Southern District of New York ("SDNY") publicly filed the unredacted version of my original mandamus petition as Dkt. 765, disclosing my real name, home address, email address, and phone number. As soon as I discovered this filing, I immediately submitted an emergency request to

the SDNY Pro Se Intake (attached as Exhibit C), asking the district court to remove Dkt. 765 from public access and replace it with a properly redacted version to protect my personally identifiable information ("PII"). On the same day, because I did not know how SDNY obtained the unredacted petition, I also filed an emergency motion in this Court requesting that my original mandamus petition be placed under seal and substituted with a redacted version, in order to mitigate any further risk.

Following my filing, the Clerk's Office of this Court assisted me in completing the necessary steps, and the motion was granted on November 18, 2025. I am grateful for the prompt actions taken by the Clerk and the Court to protect a crime victim's privacy interests.

In contrast, more than fourteen days have passed since the emergency motion was submitted to the SDNY, yet the district court has taken no action to safeguard my information. As a result of SDNY's public disclosure, my personal information has already been cited and circulated on social media, causing me irreparable personal harm.

This act was entirely discretionary — the Second Circuit **had issued no order** instructing SDNY to file my petition. When I verified with the Second Circuit Clerk's Office on October 29, they confirmed no directive had been transmitted. Therefore, SDNY's act of docketing my unredacted mandamus filing was **a self-initiated, retaliatory act.**

On November 19, 2025, SDNY took an even more anomalous step by uploading Dkt. 766, a redacted version of my mandamus petition that had been submitted solely as an attachment to my emergency motion in this Court. That attachment was never docketed on the docket of this Court, yet SDNY nevertheless uploaded it to SDNY docket while refusing to remove or seal Dkt. 765, the unredacted filing exposing my PII. This sequence demonstrates selective and retaliatory docketing rather than clerical error.

## III. EVIDENCE OF RETALIATION

### 1. Retaliatory Disclosure of Personally Identifiable Information by the SDNY

Following my earlier victim filings (Dkt. 744 and Dkt. 733), SDNY **barred all non-ECF third-party victim filings**, claiming it was "to protect privacy." Yet the Court then uploaded my unredacted mandamus petition, exposing precisely the personal data it was obligated—and had previously claimed—to protect.

Prior to filing this mandamus petition, I was required to mail a service copy of the petition to the SDNY, meaning the district court already **possessed a properly redacted version** suitable for public docketing. Rather than using that version, the SDNY deliberately retrieved the original unredacted filing from other resources and uploaded it to the district court docket. Such an act goes far beyond mere clerical oversight; it constitutes a retaliatory disclosure in direct response to the petitioner's lawful filings that had raised procedural irregularities and misconduct within the district court. This retaliatory action not only violated privacy protections under Fed. R. Crim. P. 49.1 and Fed. R. Civ. P. 5.2 but also caused irreparable harm by making sensitive personal information permanently accessible to the public, therefore violates my CVRA, 18 U.S.C. § 3771.

Despite already being in possession of a redacted version of my mandamus petition, SDNY nevertheless uploaded the redacted petition that I submitted as part of my emergency motion in this Court to SDNY docket as Dkt. 766. **This means the SDNY accessed, extracted, and selectively docketed materials that I mailed to the Court of Appeals. Such conduct has no basis in any federal rule and constitutes a direct intrusion into the appellate process.**

Even more troubling, while uploading the redacted version, the SDNY has still refused to remove the unredacted version (Dkt. 765) as of December 19, 2025, despite having full knowledge that a redacted version exists.

**This dual action—(1) refusing to remove the harmful filing for more than 14 days and (2) selectively uploading filings intended for appellate review, despite already possessing a redacted version—demonstrates that the SDNY's docketing conduct is not an accident or oversight, but a pattern of retaliation, selective docketing, and interference with the appellate record.**

## 2. Pattern of Retaliatory Exposure

This is **not the first instance of such conduct.**

 o In this case, Dkts. 723, 730, and 731 were all filed by the same pro se petitioner. Dkts. 730 and 731 were motions to compel docketing of Dkt. 723, which had not been timely uploaded by the SDNY. Notably, in Dkt. 731, the petitioner explicitly invoked privacy protection rules, stating:

"Pursuant to Fed. R. Crim. P. 49.1 and Fed. R. Civ. P. 5.2, Petitioner further requests that personal identifiers (such as passport numbers, government-issued ID, and detailed residential address) be redacted from the public docket, while the complete unredacted version remains under seal."

Nevertheless, in Dkt. 732, the SDNY inexplicably uploaded a duplicate copy of the petitioner's Dkt. 723 filing — this time in unredacted form, thereby publicly exposing all of his personal identifying information, including his residence in mainland China. This filing served no legitimate procedural purpose; it merely replicated the substance of Dkt. 723 while removing the privacy protections the petitioner had expressly requested under Rule 49.1 / 5.2. This action constitutes a clear act of retaliation by the district court in response to the petitioner's prior filing (Dkt. 723), which raised concerns about procedural irregularities and judicial misconduct in the handling of the case. By intentionally re-uploading the same motion without redaction, the court not only disregarded its duty to safeguard personal information but also subjected the petitioner to grave and foreseeable risks, particularly given the sensitivity of this case and its potential implications in the People's Republic of China.

 o SDNY mailed filings directly to Chinese citizens Chunk Chyi and Beibei Zhu, then publicly docketed the returned envelopes containing their home addresses—a reckless act that could endanger lives.

**The pattern shows SDNY does not merely neglect privacy obligations— it selectively enforces privacy rules depending on whether the filer criticizes procedural irregularities.**

**3. A. Risk to Thousands of CVRA Victims (If the government's representations are to be believed)**

The government repeatedly emphasizes that this case involves thousands of victims in Dkt. 7, 26, 192 etc. Yet, the Southern District Court's retaliatory actions—particularly the public disclosure of unredacted victim information in Dkt. 765—demonstrate a reckless disregard for the safety and privacy of these individuals. If such retaliatory conduct is tolerated, the personal information of potentially thousands of CVRA-protected victims is placed in extreme jeopardy. I am compelled to advocate not only for personal protection but also to safeguard the interests and rights of all victims whose identities and sensitive information are at risk. This systemic failure underscores the urgent need for supervisory mandamus to prevent further harm and to restore the integrity of the judicial process.

## IV. JUDICIAL BIAS

1. **Disparate Treatment of Pro Se Filings**
   Following Dkt. 745, the Court barred all filings by third-party pro se victims from being uploaded to the public docket, while permitting submissions by attorneys through the ECF system. This distinction constitutes unequal treatment in violation of the Due Process Clause of the Fifth Amendment and undermines the principles of equal access to the courts. By creating a system that privileges attorney-filed submissions over pro se filings, the Court exhibited a clear bias against pro se victims.

2. **Appearance of Judicial Impropriety Under Liteky / Caperton**
   The Court has previously recognized that the public disclosure of personal addresses constitutes a serious threat to the judicial process. For example, in Dkt. 7, the prosecution alleged that supporters of the defendant posted the private home addresses of the Chapter 11 Trustee, the Trustee's family, and other related parties, calling for protests at these locations. In Dkt. 51, Judge Torres cited such postings as evidence of obstruction of justice and intimidation of officers of the Court, and used this as a factor in the defendant's bail denial. Yet, in direct contradiction to this precedent, the Court itself has publicly posted the private addresses of a victim— myself—and other self-represented petitioners in Dkts. 732 and 765. By treating my filings in a manner that the Court has explicitly condemned in others, the Court demonstrates a clear pattern of bias against pro se petitioners and victims, applying double standards in the administration of

justice and disregarding the privacy protections mandated by Rule 49.1 / 5.2.

Furthermore, Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), establishes that the probability of bias requiring recusal is heightened when a party is subjected to systemic disadvantage that could influence the outcome. By publicly disclosing my personally identifiable information while previously criticizing similar disclosures by other parties (Dkt. 51), the Court applied a double standard, fostering the appearance of impropriety and undermining public confidence in the impartial administration of justice.

3. **Selective Docketing and Ignored Allegations of Judicial Bias**
   In Dkt. 507, Chunk Chyi raised a formal challenge alleging judicial bias. While the Court referenced Dkt. 507 in its subsequent Order 528, it provided no substantive response, explanation, or ruling regarding the recusal request. By ignoring these allegations, the Court deprived the filer of a fundamental procedural right to a fair and impartial tribunal, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments.

   Moreover, under the Code of Conduct for United States Judges, a judge must avoid not only actual impropriety but also the appearance of impropriety. The failure to address a recusal request—particularly when the filer explicitly raises concerns about bias—creates a reasonable appearance that the proceedings may not be impartial. This selective consideration undermines public confidence in the judiciary and contaminates the procedural record, thereby impairing both ongoing and appellate review.

## V. SDNY'S ACTIONS THAT MISLED AND INTERFERED WITH THE SECOND CIRCUIT'S REVIEW

The SDNY docketed my original mandamus document not only violated my CVRA, but also interfered with the procedural safeguards and assumptions under which this Court conducts mandamus review, creating both practical and legal complications for independent evaluation.

- **Corruption of the Appellate Record:** Mandamus review presupposes that filings are secure, authentic, and free from unauthorized manipulation.

SDNY's unilateral public disclosure of an appellate filing injected an extrinsic and unauthorized element into the mandamus record, undermining the integrity of the materials before this Court. Specifically, by docketing my appellate mandamus petition while simultaneously refusing to docket or acknowledge my properly submitted district-court motions (Exhibits A and B), SDNY created an irreconcilable procedural ambiguity. The record is left in a contradictory posture: the filing is publicly visible as though it had been accepted by the district court, yet it was never lawfully submitted to—or authorized for docketing in—that court. This is not a neutral clerical irregularity. It distorts the procedural history of the case and interferes with this Court's ability to conduct independent mandamus review over matters committed exclusively to its appellate jurisdiction.

The unauthorized public filing of my original mandamus petition by the Southern District of New York is **not the first incident of procedural interference** with this Court. In Dkt. 733, I demonstrated that the prosecution relied on tainted creditor registration evidence, which led to the district court's denial of the defendant's bail. The defendant appealed, and this Court, in Dkt. 87, likewise denied the appeal:

*"Ho Wan Kwok appeals a district court order denying him pre-trial release on the basis that he posed a serious risk of flight and obstruction of justice, that he posed a danger to the community..."*

As detailed in Dkt. 733, the "obstruction of justice" finding incorporated the tainted evidence submitted by the prosecution. Further, as explained in Section IV(2) of this Supplemental Petition regarding Judicial Bias, the district court's retaliatory public disclosure of my address contaminates Judge Torres' prior reliance in Dkt. 51 on similar disclosures by supporters of Ho Wan Kwok to justify obstruction of justice, which may have also influenced this Court's denial of the defendant's appeal in Dkt. 87.

Thus, SDNY's actions have repeatedly interfered with this Court's independent review, affecting both the factual and procedural integrity of the appellate record.

## VI. CRONIC STRUCTURAL ERROR

The defendant terminated his counsel in Dkt. 700, stating that the representation provided "not even the basics" and expressing that "I am very disappointed." This

circumstance illustrates why, **as a victim, I** was able to identify the fraud upon the
court allegedly committed by the prosecutors and Trustee Luc, and subsequently
submit Dkt. 733, while the defendant's three successive counsel failed to detect
it. This alone demonstrates that the defense process has **systemically
collapsed.** As referenced in Exhibit B to the Mandamus petition, from both the
perspective of judicial fraud and attorney failure, the severity of the irregularities
in this case far exceeds the scope addressed in landmark U.S. Supreme Court
cases such as Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238
(1944), and Washington v. District of Columbia, 802 F.2d 1463 (D.C. Cir. 1986). I
have detailed in Exhibit B attached to the Mandamus petition that the specific
comparisons between this case and Hazel-Atlas, Hartford-Empire Co., and
Washington, highlighting how the misconduct and systemic failures here surpass
those historic precedents. The irregularities in this case—including systemic
failure of defense counsel, alleged prosecutorial fraud, and the mishandling of
victim and evidentiary disclosures—surpass the magnitude of these historic
precedents. Therefore, this case poses the risk of becoming one of the largest
instances of judicial fraud in American history.

## VII. RELIEF REQUESTED

I invoke 28 U.S.C. § 1651(a), the All Writs Act, which authorizes this Court to
"issue all writs necessary or appropriate in aid of their respective jurisdictions and
agreeable to the usages and principles of law." I submit that the relief requested
herein—necessary to protect CVRA victims, correct procedural defects, and
prevent further retaliation—is precisely the type of writ contemplated by §
1651(a).

Moreover, I invoke the principle that mandamus relief may be broadened to
address subsequent harms caused by the district court's retaliatory actions. As
the Supreme Court noted,

"Mandamus is not limited to the original relief sought; if the district court's
subsequent actions create new harm, the writ may be broadened to correct it." —
Cheney v. U.S. Dist. Court, 542 U.S. 367, 380–81

Similarly, the Ninth Circuit has confirmed that:

"When a district court retaliates against a CVRA victim for exercising statutory rights, the victim may seek mandamus to vacate the underlying order and obtain broader relief." — Kenna v. U.S. Dist. Court, 435 F.3d 1011, 1017–18

To prevent further retaliatory doxxing of CVRA victims, the only effective remedy under §1651(a) is to vacate all tainted orders and recuse the presiding judge.

Thus, the SDNY's retaliatory actions in leaking Dkt. 765 trigger my right to respectfully seek an expanded mandamus remedy as follows:

1. Direct the Southern District of New York ("SDNY") to immediately remove or seal Dkt. 765, Dkt. 732, and any other filings containing unredacted victim information from all publicly accessible court systems, including but not limited to PACER, CourtListener, and similar platforms; and to upload the two redacted original motions (Exhibit A and B in the mandamus petition) that I previously submitted via the SDNY Pro Se email but suppressed from the docket;

2. Direct the SDNY to docket all proper third-party pro se documents;

3. In light of the Cronic structural collapse described herein, issue supervisory directions to stay or vacate enforcement of the bail denial order, the preliminary forfeiture order, the conviction orders and the sentencing proceedings as well as any other tainted procedures resulting from these procedural defects, pending independent review.

4. Order the recusal of Judge Analisa Torres pursuant to 28 U.S.C. § 455(a), due to the appearance of bias and conflict of interest;

5. Issue such further supervisory instructions as may be necessary to restore judicial integrity and prevent further retaliation against CVRA victims.

6. In order to avoid being retaliated by the SDNY again but also showing necessary document content on the docket, upload the redacted version of this Supplemental Petition_redacted.pdf and Exhibit C_public.pdf to the public docket to the case 25-2726, and retain the fully signed, unredacted versions under seal as part of the Court's internal record.

7. Direct SDNY to docket the redacted version of this Supplemental Petition to SDNY docket, to ensure consistency with Dkt. 765 and to prevent further selective docketing that impairs this Court's supervisory review.

December 19, 2025
Respectfully submitted,
Ryan Ba

# Exhibit E

## Case 25-2726 Dkt. 29 LETTER advising the Court of recent developments

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Case: 25-2726**
**SDNY case: 1:23-CR-118-1 (AT)**

**In re: Ryan Bai (real name: Ranyue Bai), Petitioner**

## Letter Advising the Court of Recent Developments Relevant to Previous Expanded Supplemental Mandamus Petition

### To the Clerk of Court and the Honorable Judges of the United States Court of Appeals for the Second Circuit:

I respectfully submit this letter in support of my pending petition for an Expanded Supplemental Mandamus Petition filed on the docket (case 25-2726 Dkt. 26, Exhibit D) on December 22, 2025. This letter is submitted solely to advise the Court of recent district court developments relevant to the pending mandamus review, including a district court order issued on December 22, 2025 (SDNY Dkt. 782) and a related pre-petition docket development reflecting the district court's handling of non-defendant third-party filings (SDNY Dkt. 777), and to explain the relevance of these developments to the issues presently before this Court.

I submit this letter only to advise the Court of this intervening development and its relevance to the Court's ongoing mandamus review. **I do not seek additional relief through this letter and defer entirely to the Court's discretion regarding its consideration.**

The district court's order is itself significant for an additional reason relevant to this Court's mandamus review. By expressly contemplating the appointment of a special master to manage third-party claims, the district court has acknowledged a breakdown in its ability to timely and neutrally process the interests of non-defendant third parties within the ordinary judicial framework.

That acknowledgement confirms that my previous mandamus allegations concerning systemic failure in the handling of third-party victim filings are not

speculative or hypothetical. Rather, the district court has now expressly recognized—through its own order—that its existing procedures have proven inadequate to address the volume, complexity, or sensitivity of third-party claims arising from this case.

The December 22, 2025 order contemplates the possible appointment of a special master to address certain third-party claims arising in connection with forfeiture administration. I do not dispute the district court's authority to manage ancillary forfeiture proceedings. **However, the order does not address the court's independent, mandatory, and non-delegable obligations under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.**

Specifically, the order does not address the continued public availability of unredacted filings containing my personally identifiable information, including Dkt. 765—an issue squarely raised in the pending Expanding Mandamus Petition. As of the date of this letter, that filing remains publicly accessible. **The resulting harm to a CVRA-protected victim is ongoing and irreparable.**

Notwithstanding the issues expressly raised in the Expanded Supplemental Petition, the December 22 order takes no action to remedy the continuing disclosure of victim information or to mitigate the associated privacy and safety risks. As a practical matter, the order leaves unresolved the CVRA violations presented to this Court, **while shifting attention to ancillary administrative mechanisms that cannot substitute for the district court's own statutory duties to protect victims.**

The December 22, 2025 order must also be evaluated in light of the district court's prior findings on obstruction of justice. As detailed in my Expanded Mandamus Petition, the court relied on exposure of private addresses and personal information of the bankruptcy trustee and related individuals by defendant supporters as a basis to deny bail (SDNY Dkt. 7, 26, 51)—a rationale later affirmed by this Court (SDNY Dkt. 87).

Against this backdrop, the unauthorized public docketing of Dkt. 765—exposing me and containing my unredacted home address and personal information— subjects me to the very retaliatory risks previously recognized. Its continued availability inflicts ongoing harm and contaminates the procedural record underlying both the district court's obstruction findings and this Court's appellate review. **The December 22 order does not resolve this inconsistency;**

**shifting focus to a prospective special master for forfeiture claims leaves unaddressed the ongoing disclosure and cannot substitute for the district court's immediate, non-delegable duty to protect victim information.**

**Prior Docket Developments Illustrating Disparate Treatment of Non-Defendant Victims :**

On December 17, 2025, the district court docketed ECF No. 777, a petition filed pursuant to 21 U.S.C. § 853(n) by a non-defendant investor-victim, represented by counsel, seeking adjudication of his property interest in forfeited assets. That filing was promptly accepted and made publicly available on the docket. By contrast, multiple filings submitted by CVRA-protected victims have not been docketed or have remained unaddressed for extended periods.

This disparity is not attributable to administrative incapacity. Section 853(n) petitioners and CVRA victims are both non-defendants asserting statutorily protected interests arising from the same criminal conduct. Yet the district court has afforded full procedural access and docket visibility to § 853(n) claimants, while CVRA-based submissions seeking protection from ongoing harm remain unremedied. **The differential treatment reflects a categorical privileging of forfeiture-administration claims over mandatory victim-protection obligations.**

The acceptance of ECF No. 777 confirms that the district court remains fully capable of docketing non-defendant victim filings when it elects to do so. The continued failure to docket, address, or remediate CVRA-based submissions after this Court's involvement confirms that the issue is not delay, but selective enforcement of access and protection.

Accordingly, these recent developments strengthen the showing that the Expanded Mandamus relief is necessary to halt ongoing statutory violations, restore parity among victims, and to ensure that the issues presented to this Court are reviewed on a complete and uncontaminated procedural record.

Respectfully submitted,
Ryan Bai
December 23 2025

# Exhibit F

## Evidence showing order 596 is based on false factual premises

SDNY upload time for Order 528 is Apr 3, 2025 4:30 PM EST, **corresponds to Apr 4, 2025 4:30 AM in China Time.**

**All my documents were sent on Apr 3, 2025 China time, latter docketed as Dkt. 554, 555, 556, 557**

This shows that all my documents were sent before the upload time of Order 528. Order 528 thus based on false factual premises.



10:03

Gmail

Gmail 应用变得更强大易用
安全快捷的电子邮件服务，助您有条不紊地处理大小事务

打开

已发...

The fourth letter to related parties to Case No. 1:23-CR-118-1 (AT)

喜和
baoliao2019@gmail.com
隐藏详细信息

收件人: ProSe@nysd.uscourts.gov

日期: 2025年4月3日, 07:37

thanks to GREAT USA

PDF  The fourthLetter to rela...

喜和
---------- Forwarded message ---------- 发件人: 喜
和 <baoliao2019@gmail.com> Date: 2025年4月

喜和
收件人 icejulythai
2025年4月3日 详情



10:06 📶 ⋯     VPN ⊘ HD3 5G.ıll 5G.ıll 83

🔵   Gmail       ⊞   ↻

**Gmail 应用变得更强大易用**
安全快捷的电子邮件服务，助您有条不
紊地处理大小事务     打开

已发...       ⬇   🗑   ▾

Motion to Compel Prosecution to Disclose Known ☆
Victims to Case No. 1:23-CR-118-1 (AT)

**喜和**
thanks to court staff, thanks to the Judge, thanks to
GREAT USA.

**喜和**
---------- Forwarded message --------- 发件人： 喜
和 <baoliao2019@gmail.com> Date: 2025年4月3日

**喜和**
Subject: Fwd: Motion to Compel Prosecution to
Disclose Known Victims to Case No. 1:23-CR 118

**喜和**       ↩
baoliao2019@gmail.com
隐藏详细信息

收件人：   P   ProSe@nysd.uscourts.gov

日期：   2025年4月3日, 05:39

---------- Forwarded message ---------
发件人： 喜和 <baoliao2019@gmail.com>

<    >    6    ≡    ⌂

≡    ☐    <



10:03

Gmail

**Gmail 应用变得更强大易用**
安全快捷的电子邮件服务，助您有条不
紊地处理大小事务

打开

已发...

my letter to Geyer to Case No. 1:23-CR-118-1 (AT)

**喜和**
baoliao2019@gmail.com
隐藏详细信息

收件人: ProSe@nysd.uscourts.gov

日期: 2025年4月3日, 13:33

thanks to great America!

PDF **My letter to Geyer.pdf**

**喜和**
收件人 Hi
2025年4月3日 详情

---------- Forwarded message ---------
发件人: 喜和 <baoliao2019@gmail.com>
Date: 2025年4月3日周四 13:33
Subiect: mv letter to Gever to Case No. 1:23-CR-118-1

6

# United States *v.* GUO

## Order — Document #528

### District Court, S.D. New York

**Docket Number:** 1:23-cr-00118
**Citation:** United States v. GUO, 1:23-cr-00118, (S.D.N.Y. Apr 03, 2025) ECF No. 528
**Date Filed:** April 3rd, 2025, 1:27 p.m. EDT
**Uploaded:** April 3rd, 2025, 4:30 p.m. EDT

🔖 Add Note    🔍 Search this PDF  ▼    Download PDF 🅿 ▼

### Description

ORDER REGARDING LETTERS AND MOTIONS FROM NONPARTIES as to Miles Guo, Kin Ming Je, Yvette Wang. (Signed by Judge Analisa Torres on 4/3/2025) (See ORDER as set forth) (Copies mailed by the Clerk's Office on 4/3/2025 to Bei Bei Zhu, Cherry Blossom Road, Xi, a City, Shaanxi Province 19802907101 and Chunk Chyi, Building 1, Yard 4, South Third Ring Road West, Fengtai District, Beijing, China 86-10-67526666) (lnl) (Entered: 04/03/2025)

PDF    TEXT



# Certificate of Service

**In re: Chunk Chyi, Petitioner**
**United States Court of Appeals for the Second Circuit**
**SDNY case: United States v. Kwok, et al. 1:23-CR-118-1 (AT)**

I hereby certify that on January 7, 2026, the following materials were served:

1. **Petition for Writ of Mandamus (enclosed)**
2. **Exhibit A – SDNY Order, Dkt. 528 (publicly available court order)**
3. **Exhibit B – SDNY Order, Dkt. 596 (publicly available court order)**
4. **Exhibit C – Second Circuit Order in Case No. 25-2726 (publicly available court order, SDNY Dkt. 767)**
5. **Exhibit D – Case No. 25-2726, Dkt. 26 (publicly docket filing)**
6. **Exhibit E – Case No. 25-2726, Dkt. 29 (publicly docket filing)**
7. **Exhibit F – Evidence Showing Order 596 Is Based on a False Factual Premise (enclosed)**

**Exhibits A through E were served by reference, Exhibit F was served by mail together with the Petition.**

Service was effected via mailing on the following recipients:

**The Honorable Analisa Torres**
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Ryan B. Finkel**
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza New York, NY 10007

Respectfully submitted,
Chunk Chyi (real name: Chunhong Qi),
Executed on January 7, 2026

PRESS FIRMLY TO SEAL

 

PRESS FIRMLY TO SEAL

**PRIORITY MAIL**
**FLAT RATE ENVELOPE**
**POSTAGE REQUIRED**



# UNITED STATES POSTAL SE...  PRIORITY®

- Expected delivery date specified
- Domestic shipments include $10
- USPS Tracking® service included
- Limited international insurance.*
- When used internationally, a cus

*Insurance does not cover certain items. F
Domestic Mail Manual at http://pe.usps.co
** See International Mail Manual at http://p

## FLAT RATE ENV

ONE RATE ■ ANY WEIGHT

## TRACKED ■ INSU



PS00001000014

---

**UNITED STATES POSTAL SERVICE.**    *Retail*

**P**    US POSTAGE PAID
**$11.90**
Origin: 94401
01/08/26
0544010251-01

**PRIORITY MAIL®**

0 Lb 8.20 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 01/12/26

C099

SHIP
TO:
  40 FOLEY SQ
NEW YORK NY 10007-1502

**USPS TRACKING® #**

9505 5143 0278 6008 0260 74

---

FROM:

Chunk Chyi
c/o Ranyue Bai
181 E. Tasman Dr, Suite 20
PMB #364
San Jose, CA 95134



TO: USM4LT SDNY

Clerk of Court
United States Court of Appeals for th
Second Circuit
40 Foley Square
New York, NY 10007

